UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                          :
ANTHONY R. COX, JR.                       :        CASE NO. 1:14-CV-00993
                                          :
          Plaintiff,                      :
                                          :
vs.                                       :        OPINION & ORDER
                                          :        [Resolving Docs. 21, 24, 29]
TELETECH@HOME, INC.                       :
                                          :
          Defendant.                      :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

 Plaintiff Anthony Cox brings this action against Defendant TeleTech@Home, Inc. ("TeleTech") for alleged willful violations of the Fair Credit Reporting Act ("FCRA"). Specifically, Cox says TeleTech failed to provide him a copy of a consumer report and a summary of his rights before rescinding a job offer because of information in that consumer report.[1] Plaintiff Cox has moved to certify a class of all applicants to TeleTech who have been affected by these alleged violations.[2] TeleTech opposes class certification.[3] Simultaneously, TeleTech has moved for summary judgment,[4] which Cox opposes.[5]

 For the following reasons, the Court **DENIES** TeleTech's motion for summary judgment, and **DENIES** Cox's motion for class certification.

---

[1] Doc. 1.
[2] Doc. 21.
[3] Doc. 26.
[4] Doc. 24.
[5] Doc. 25.

Case No. 1:14-CV-00993
Gwin, J.

# I. Background [6/]

In August 2013, Plaintiff Cox applied for a job with Defendant TeleTech.[7/]  The job involved taking calls as a customer service representative for Best Buy, one of TeleTech's clients.[8/]  On September 10, 2013, Cox received a conditional offer of employment contingent on passing a certain pre-employment screening.[9/]  In that offer, TeleTech told Cox that part of this screening would include obtaining and reviewing a consumer report to determine if Cox had a criminal history that would make him ineligible for the job.  After reviewing a summary of his rights under the FCRA regarding the consumer report, Cox consented to this background check.[10/]  He was scheduled to attend orientation on September 27, 2013, and to start job training on October 2, 2013.[11/]

TeleTech uses Sterling Infosystems, Inc. ("Sterling"), a consumer reporting agency, to perform background checks on prospective employees.[12/]  If Sterling's background check turns up information that could disqualify the candidate for the job—such as a criminal history—Sterling sends the candidate a pre-adverse action notice on TeleTech letterhead, as well as a copy of the

---

[6/]Cox attached a declaration to his motion for class certification that is the source of some of this background information.  *See* Doc. 21-6.  Cox also referenced this declaration in his opposition to the motion for summary judgment.  *See, e.g.*, Doc. 25 at 2.  TeleTech has moved to strike this declaration, calling it a "sham" that directly contradicts Cox's prior deposition testimony.  Doc. 29.  Cox opposes the motion.  Doc. 30.  The Court may strike or disregard a declaration that directly contradicts prior deposition testimony in an attempt to create a genuine issue of material fact.  *See White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)).  In this case, however, the Court finds that Cox's declaration merely supplements and clarifies ambiguous or conflicting answers in his deposition testimony, rather than directly contradicting it.  The Court therefore **DENIES** the motion to strike.

[7/]Doc. 24-7 at 28–29.

[8/]*See id.* at 30–31, 49–50.

[9/]Doc. 21-6 at 2.

[10/]*See* Doc. 24-7 at 33, 37, 61–65; Doc. 24-9.

[11/]Doc. 24-7 at 54–57.

[12/]Doc. 24-4 at 20, 24.

-2-

Case No. 1:14-CV-00993
Gwin, J.

consumer report and a summary of FCRA rights.[13]  The pre-adverse action notice provides instructions to the candidate about how to challenge the information in his consumer report.  If the candidate successfully challenges the consumer report, the candidate may work for TeleTech.[14]  If the candidate does not successfully challenge the consumer report, the conditional job offer is rescinded, and Sterling sends the candidate an adverse action notice on behalf of TeleTech.[15]

On September 17, 2013, one week after receiving his conditional offer of employment from TeleTech, Cox received a form email TeleTech's from Talent Acquisition Department—a division of human resources—advising Cox that there was an issue with his pre-employment screening.  The meaning of this email is the primary point of contention between the parties.  It had the subject line, "Urgent | Rescinded offer," and stated:

> After successfully completing the interview process we extended to you an offer of employment.  In your offer call we advised you of the pre employment items that needed to be successfully completed in order to continue in the hiring process.  Your offer is contingent on all pre employment items being completed successfully and within the required time frames.
>
> One or more items of your pre employment screening were either not completed in the time required and the results of the pre-employment screening make you ineligible for hire at this time.
>
> If your removal is due to a failed drug screen you will be contacted by the Medical Review Officer for the lab where you were tested.  If there was a finding on your criminal background screening that makes you ineligible for hire with TeleTech, you will receive a notification from our third party vendor as well as an explanation of your rights in regards to this decision.
>
> *Unfortunately at this time we are rescinding your offer of employment.  Please do not attend or attempt to attend class as you are no longer eligible for this position.*  If you believe you have received this message in error, please contact us at

---

[13]/Doc. 24-6 at 6.

[14]/*Id.*

[15]/*Id.*

-3-

Case No. 1:14-CV-00993
Gwin, J.

> newhireathome@teletech.com or by chatting with us at
> http://www.TeleTechJobs.com/athome through our live chat feature.  We'd be
> delighted to research your situation and provide any necessary guidance.
>
> We would like to thank you for your interest in TeleTech@Home and wish you the
> best of luck in your career search.[16/]

TeleTech does not know for sure who wrote this form email, or how it became part of their hiring process. The current theory is that Amy Jaeger, a former "talent acquisition manager" for TeleTech, drafted it and uploaded it to TeleTech's automated system; Jaeger, however, does not remember doing so.[17/]  Nobody in TeleTech's management approved the form email, or even knew of its existence until this lawsuit was filed.[18/]  But it was sent to several hundred prospective employees between June 2012 and May 2014.[19/]

The email did not tell Cox exactly what the problem with his screening was.  But he had a hunch.[20/]  Cox knew, from similar prior experiences, that he has the same name as a convicted felon from Fairbanks, Alaska, and suspected that Sterling had erroneously attributed that conviction to him.[21/]

Cox tried to get information from his TeleTech prospective employee online account, which had been created during the application process, only to find he had been locked out of it.[22/] Nevertheless, he learned through a Google search that TeleTech used Sterling to conduct background

---

[16/]Docs. 21-1, 24-11 (emphasis in original).

[17/]*See* Doc. 25-3 at 14, 17–18, 28–29; Doc. 24-17 at 9–12.

[18/]*See* Doc. 24-4 at 118–19.

[19/]*Compare* Doc. 21-3 (Cox alleges 976 individuals received the form email), *with* Doc. 26-17 (TeleTech alleges 692 applicants received the form email).

[20/]Doc. 24-7 at 70, 73–74.

[21/]*See id.* at 7–10, 38–41 (describing litigation against a former employer and consumer reporting agency stemming from similar inaccurate information in a consumer report leading to his termination), 74–75.

[22/]Doc. 21-6 at 3.

-4-

Case No. 1:14-CV-00993
Gwin, J.

checks.[23/]  On September 17, the same day he received the form email, Cox contacted Sterling by telephone to contest the information in his consumer report.[24/]

On September 19, 2013, two days after receiving the email from TeleTech's Talent Acquisition department, Cox received a pre-adverse action notice from Sterling (on TeleTech letterhead) via email.[25/]  This pre-adverse action notice said that TeleTech "ha[d] decided to revoke [Cox's] conditional offer of employment," "subject to [Cox] successfully challenging the accuracy of" a criminal report prepared by Sterling.[26/] It advised Cox to contact Sterling "within five business days of the receipt of this letter" if he "believe[d] the information . . . [was] not accurate," and to contact his recruiter at TeleTech once he had done so.[27/]  The pre-adverse action notice did not, however, say what information was in the criminal report.

A few days later, Cox received by U.S. Mail a paper copy of this pre-adverse action notice, as well as the consumer report prepared by Sterling and a summary of his FCRA rights.[28/]  Upon receiving his consumer report, Cox confirmed what he had previously only suspected: Sterling had misidentified him as having an Alaska felony conviction.[29/]

Around this time, Cox received in a separate mailing a packet of paperwork from Sterling to fill out in order to contest his consumer report.[30/]  Cox completed the paperwork and returned it

---

[23/]*Id.*

[24/]*Id.*; Doc. 24-7 at 75–77.

[25/]Doc. 21-6 at 3.

[26/]Doc. 24-8.

[27/]*Id.*

[28/]Doc. 21-6 at 4.

[29/]Doc. 21-6 at 4; Doc. 24-7 at 84–85; Doc. 24-12.

[30/]Doc. 21-6 at 4;  Doc. 24-7 at 99.

-5-

Case No. 1:14-CV-00993
Gwin, J.

to Sterling.[31/]  He says he did not contest the Sterling consumer report for the purpose of reviving his conditional offer from TeleTech, but rather for the purpose of avoiding future erroneous reports when he sought other jobs.[32/]

Exactly what happened next is somewhat unclear.  Cox sent TeleTech an email on September 17, 2013, and then exchanged five emails with various TeleTech representatives from September 26 to September 27, 2013.[33/]  The contents of the emails, however, have been lost—a situation that each party blames on the other.[34/]

TeleTech says it never rescinded Cox's job offer, and instead that his application was merely "on hold" pending resolution of the disputed consumer report information.[35/]  TeleTech employee Sigmund Chan contacted Cox on September 26, 2013, after receiving his corrected consumer report from Sterling.[36/]  Because the corrected consumer report showed that Cox does not have a felony conviction, Chan told Cox that his application was no longer "on hold," and that he should attend the scheduled training on October 2, 2013.[37/]  TeleTech says it then reversed course, and Chan told Cox on September 27, 2013, that Cox should not attend the training because he had not submitted a required I-9 form.[38/]

Cox characterizes this email exchange somewhat differently.  Cox acknowledges that

---

[31/]Doc. 24-7 at 87–89, 99.

[32/]*Id.* at 92–94; Doc. 21-6 at 3.

[33/]Doc. 25-5.

[34/]*See* Doc. 24-2 at 9–10; Doc. 27 at 8 n.9.

[35/]Doc. 24-4 at 32–33, 36–37.

[36/]*See* Doc. 24-7 at 97–101.

[37/]*Id.*

[38/]*See id.* at 112.  An I-9 is an "Employment Eligibility Verification" form that requires the employee to attest that he is authorized to work in the United States and present acceptable documents evidencing his identity.  *See I-9, Employment Eligibility Verification*, U.S. Citizenship and Immigration Servs., http://www.uscis.gov/i-9 (last updated May 8, 2013).

Case No. 1:14-CV-00993
Gwin, J.

TeleTech re-offered him the job and then revoked it again (although he says that he had in fact submitted his I-9 form).[39] However, Cox says he was convinced from the September 17, 2013, form email that his offer had been rescinded, and that he made no effort to revive his offer from TeleTech.[40] He suggests it is possible that his girlfriend, Vontisha Seawood, a TeleTech employee, sent emails to TeleTech on his behalf on September 17, 2013, and September 26, 2013, using his email account, and that these emails may have led to TeleTech re-offering him the job.[41]

Regardless, Cox never corrected his I-9 form issue and did not attend the October 2, 2013, training session.[42] Cox has never worked for TeleTech.

## II. Motion for Summary Judgment

### A. Legal Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[43] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[44] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[45] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[46] But the Court will view the facts and all reasonable inferences from those

---

[39]Doc. 24-7 at 97–109.
[40]See id.; Doc. 21-6 at 2–3.
[41]See Doc. 24-7 at 106–09.
[42]Id. at 108–09, 116.
[43]Killion v. KeHE Distribs., LLC, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[44]See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
[45]See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[46]Id. at 586.

Case No. 1:14-CV-00993
Gwin, J.

facts in favor of the non-moving party.[47]

**B. Analysis**

Section 1681b(b)(3) of the FCRA states, in relevant, part:

[I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—(i) a copy of the report; and (ii) a description in writing of the rights of the consumer under [the FCRA] . . . .[48]

The FCRA defines an adverse action as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee."[49] An adverse action occurs when an employer revokes a conditional offer of employment to a prospective employee.[50] Before making this final decision, the employer must provide a "real opportunity for [the] applicant[] to contest the adjudication or change its outcome thereafter."[51]

The FCRA is not violated until an adverse employment decision "is communicated or actually takes effect, and an [employer] has until that time to take the necessary steps to comply with the FCRA's requirements."[52] Moreover, it is necessary that the employer have formed the intent to take the adverse action—it is not enough that the employer appears to have formed the intent.[53] An adverse action does not occur where the employer merely alerts the prospective employee that it is

---

[47]/*Killion*, 761 F.3d at 580 (internal citation omitted).

[48]/15 U.S.C. § 1681b(b)(3).

[49]/15 U.S.C. § 1681a(k)(1)(B)(ii).

[50]/*See Obabueki v. Int'l Bus. Machines Corp.*, 145 F. Supp. 2d 371, 391–92 (S.D.N.Y. 2001).

[51]/*Moore v. Rite Aid Hdqtrs Corp.*, No. 13-1515, 2014 WL 3535568, at *5 (E.D. Pa. July 30, 2014) (internal quotation marks and citation omitted).

[52]/*Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 703 (S.D. Ohio 2010) (citing *Obabueki*, 145 F. Supp. 2d 371; *In re Farmers Ins. Co., Inc. FCRA Litig.*, No. CIV-03-158-F, MDL No. 1564, 2007 WL 4215833 (W.D. Okla. Nov. 29, 2007)).

[53]/*Obabueki*, 145 F. Supp. 2d at 392 ("[H]ow can an employer send an intent letter without having first formed the requisite intent?").

Case No. 1:14-CV-00993
Gwin, J.

considering revoking the offer.  This would be exactly the process encouraged by the FCRA: the employer tells the prospective employee there is an issue with his consumer report that, if true, would disqualify him from employment, and allows the prospective employee a reasonable time to contest and correct the report before making a final decision not to hire him.[54/]

When viewed in the light most favorable to Cox, there is a genuine issue of material fact as to whether the September 17, 2013, form email reflects an adverse action or is merely a pre-adverse action notice.  As demonstrated by the parties' briefing, the email is ambiguous and subject to two readings.  It had the subject line, "Urgent | Rescinded offer."  The body of the email said in unqualified terms that Cox was "ineligible for hire" and that TeleTech was "rescinding [his] offer of employment."  It ended with what sounds like a final good-bye: "We would like to thank you for your interest in TeleTech@Home and wish you the best of luck in your career search."

On the other hand, the email noted that Cox would be receiving a copy of his consumer report and summary of his rights as required by the FCRA, and told Cox to contact TeleTech if he believed there had been a mistake.  One reading suggests that a final decision had already been made, while the other reading suggests that Cox's application was simply "on hold" pending his challenge to the consumer report.

The contextual evidence also points in different directions.  That TeleTech locked Cox out of his TeleTech prospective employee online account suggests that an adverse action was taken. It is also possible that TeleTech did not merely place his position "on hold," but in fact made a final decision to rescind his offer and then reversed course after being contacted, potentially by Cox's

---

[54/]*See* Goode v. LexisNexis Risk & Information Analytics Grp., Inc., 848 F. Supp. 2d 532, 539–40 (E.D. Pa. 2012) (citing Lynne B. Barr & Barbara J. Ellis, *The New FCRA: An Assessment of the First Year*, 54 Bus. Law. 1343, 1348 (1999)).

Case No. 1:14-CV-00993
Gwin, J.

girlfriend. But Cox's correspondence with Sterling and TeleTech employee Sigmund Chan suggests that TeleTech intended to have a process in place for candidates to contest their consumer reports. It is thus just as possible that Cox's invocation of this process led to TeleTech's decision to re-offer him the job.

These are the type of factual disputes that make summary judgment inappropriate. A reasonable jury could find that the form email Cox received on September 17, 2013, constituted an adverse action, and thus conclude that TeleTech violated the FCRA.

In the alternative, TeleTech argues that even if there is a genuine issue of material fact as to whether a violation occurred, in no case can Cox prove the violation was willful.[55/] A negligent violation entitles a consumer to actual damages,[56/] and a willful one entitles the consumer to actual or statutory damages, and possibly punitive damages.[57/] Willful noncompliance includes reckless disregard for the FCRA's requirements, meaning "that the the risk of harm is either known or so obvious that it should be known."[58/]

Here, a reasonable jury could conclude that TeleTech's actions amounted to reckless disregard for its FCRA obligations. The employee who most likely drafted the form email Cox received on September 17, 2013, does not remember doing so, and there is no record of any of her superiors approving it.[59/] This letter was sent to hundreds of applicants over a two year period without TeleTech's management even being aware of it until this litigation was started.[60/] And

---

[55/] Doc. 24-2 at 16–20.

[56/] 15 U.S.C. § 1681*o*.

[57/] 15 U.S.C. § 1681n.

[58/] *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–60, 68–70 (2007).

[59/] *See* Doc. 24-4 at 118–19; Doc. 24-17 at 9–12; Doc. 25-3 at 14, 17–18, 28–29.

[60/] *See* Doc. 24-17 at 9–12*; cf. Mathews v. Gov't Emps. Ins. Co.*, 23 F. Supp. 2d 1160, 1164–65 (S.D. Cal. 1998) ("The Court finds as a compelling standard of law that individuals who recklessly disregard *any* of their important
(continued...)

Case No. 1:14-CV-00993
Gwin, J.

TeleTech apparently had no systematic policy or procedure to ensure it complied with the FCRA,[61]

despite the fact that employees had received training and were aware of the FCRA's requirements.[62]

Summary judgment is therefore inappropriate as to the issue of willfulness.

### III. Motion for Class Certification

Several hundred applicants to TeleTech encountered problems with their background checks

as well, and received the same form email Cox did before being contacted by Sterling.  Cox thus

moves to certify a class of:

> All applicants of TeleTech@Home, Inc. to whom TeleTech@Home, Inc. sent an
> email identical to Exhibit 1 attached to Plaintiff's Motion for Class Certification
> ([Doc. 21-1]) because of a failed background check before providing the
> applicants a copy of their consumer report and a description in writing of their
> rights under the FCRA.[63]

### A. Legal Standard

A member of a class may sue, as a representative, on behalf of all class members only if the

prerequisites of Rule 23(a) are met:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or
> defenses of the class; and

---

[60]/(...continued)
responsibilities under the FCRA may be liable for punitive damages pursuant to 15 U.S.C. § 1681n.  Congress did not
intend to enable mass-users of credit reports to evade meaningful liability for repeated violations of their 'grave
responsibilities' under the FCRA by sticking their heads in the sand and pleading ignorance of the law.").

[61]/ *See* Doc. 21-4 at 9–10 (requesting via Interrogatory that TeleTech identify such documents and TeleTech
promising to produce them); Doc. 25 at 15 n.17 ("TeleTech did not produce a single document in the litigation containing
any written FCRA policy or procedure.").  In its response briefing, TeleTech did not dispute this allegation.  *See* Doc.
28 at 15–20.

[62]/ Doc. 24-4 at 82–83; Doc. 25-2.  *See Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1229 (D.N.M.
2006) ("Circumstantial evidence of the company's experience in dealing with credit reports and knowledge of the FCRA
also can support an inference that the defendants knew their actions were impermissible." (internal quotation marks and
citations omitted)); *cf. Mathews*, 23 F. Supp. 2d at 1163–64 (discussing the "reasonable procedures" defense under 15
U.S.C. § 1681m(c)).

[63]/ Doc. 27 at 10 n.6.

-11-

Case No. 1:14-CV-00993
Gwin, J.

(4) the representative parties will fairly and adequately protect the interests of the class.[64]

In addition, "the court [must] find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[65]

The Supreme Court has recently said that "Rule 23 does not set forth a mere pleading standard."[66]  Instead, a party seeking certification of a class action "'must affirmatively demonstrate his compliance' with Rule 23."[67]  As a result, courts should give a "rigorous analysis," which may "overlap with the merits of the plaintiff's underlying claim."[68]  But courts should consider the merits of the case only to the extent that "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[69]

### B. Analysis

TeleTech first argues that Cox lacks standing to pursue these claims on behalf of the class because he suffered no adverse action and therefore is not a member of the class.[70]  But as explained above, a reasonable jury could find in Cox's favor on his claim.  Thus, this argument loses.

Moving through the four prerequisites of Rule 23(a), it is clear that the numerosity element is satisfied; TeleTech does not challenge it.  Several hundred prospective employees would be

---

[64]/Fed. R. Civ. P. 23(a).

[65]/Fed. R. Civ. P. 23(b)(3).  Federal Rules of Civil Procedure 23(b)(1) and (2), which provide two alternative bases for maintaining a class action, are not at issue here.  "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

[66]/*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

[67]/*Id.*

[68]/*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Dukes*, 131 S. Ct. at 2541).

[69]/*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013).

[70]/Doc. 26 at 10–11.

-12-

Case No. 1:14-CV-00993
Gwin, J.

covered by the class definition,[71] which is a "substantial" number.[72]

Commonality requires that "a class action will generate common answers that are likely to drive resolution of the lawsuit."[73] "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'"[74] Taken together, commonality and typicality "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."[75] The requirement of adequacy then "brings into play any concerns about the competency of class counsel and any conflicts of interest that may exist."[76] These three Rule 23(a) requirements are by their nature intertwined and may appropriately considered together.[77]

Commonality is satisfied if the claims of the class "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[78] There are two common questions here: first, whether TeleTech failed to provide the required FCRA disclosures before taking adverse action against prospective employees, and second, whether such a violation was willful. The answer to these questions would dispositively decide the issue of TeleTech's liability as to the entire class.

---

[71] Compare Doc. 21-3 (Cox alleges 976 individuals received the form email), with Doc. 26-17 (TeleTech alleges 692 applicants received the form email).

[72] See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 722 F.3d 838, 852 (6th Cir. 2013) (citing Daffin v. Ford Motor Co., 458 F.3d 549, 552 (6th Cir. 2006)).

[73] In re Whirlpool, 722 F.3d at 852.

[74] Id. (quoting Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998) (en banc)).

[75] Dukes, 131 S. Ct. at 2551 n.5.

[76] In re Whirlpool, 722 F.3d at 853.

[77] Id.

[78] Dukes, 131 S.Ct. at 2551.

-13-

Case No. 1:14-CV-00993
Gwin, J.

"A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."[79/] Typicality can exist despite some factual differences.[80/] But unique defenses applicable only to the representative plaintiff are capable of destroying typicality and may warrant the denial of class certification.[81/] Because the class claims rise or fall with the claims of the class representative, the Court must ensure that the defendant does not have unique defenses to the claims of the class representative; a representative plaintiff should not be permitted to impose such a disadvantage on the class.[82/]

The general nature of the claim Cox makes—that TeleTech violated the FCRA by taking adverse action against him before making the required disclosures—is typical of the class. But some of the unique factual circumstances of his case suggest that he is atypical in other respects. Most notably, Cox went out of his way to contact Sterling before receiving their standard dispute forms, his girlfriend may have contacted TeleTech on his behalf after he received the form email on September 17, 2013,[83/] and he was re-offered the job. And Cox arguably failed to submit an I-9 form, a requirement unrelated to the FCRA.

These issues may cause Cox to be "distracted by a relatively unique personal defense" that

---

[79/] *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citation and quotation marks omitted).

[80/] *See Daffin*, 458 F.3d at 552–53.

[81/] *See Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164–65 (7th Cir. 1974) (upholding denial of class certification where the named plaintiffs were subject to unique defenses); *Rodriguez v. Dept. of Treasury*, 108 F.R.D. 360, 363 (D.D.C. 1985) (finding plaintiff did not meet the typicality requirement of class certification where the defendant raised an arguable defense unique to that plaintiff).

[82/] *See Garonzik v. Shearson Hayden Stone*, 574 F.2d 1220, 1221 (5th Cir. 1978); *Zenith Labs., Inc. v. Carter Wallace, Inc.*, 530 F.2d 508, 512 (3rd Cir. 1976).

[83/] The lost emails from September 17, 2013, through September 27, 2013, may also become a distracting side issue.

-14-

Case No. 1:14-CV-00993
Gwin, J.

would "result[] in less attention to the issue which would be controlling for the rest of the class."[84]
It would be unfair to saddle the rest of the class members with these issues.[85]

Adequacy requires that "a plaintiff seeking to represent the class must demonstrate that he or she will fairly and adequately represent and protect the interests of the class."[86] Cox's counsel are well qualified to handle an FCRA class action.[87] But a class representative's lack of typicality raises concerns about his adequacy, since he may have different incentives and interests from other class members.[88]

This is especially apparent as to the question of damages in this case. Cox was ultimately not hired because TeleTech believed he failed to submit an I-9 form. Cox will thus have difficulty proving that he has any actual damages. His briefing never mentions actual damages, and instead demonstrates that he only intends to pursue statutory damages under a willful violation theory.[82] This could impair the claims of other class members who have suffered actual damages and could recover even if only a negligent FCRA violation occurred.[83] Even if the Court were to bifurcate the liability and damages phases,[84] the problem would remain since Cox's trial strategy at the liability phase would likely pursue the willful violation theory at the expense of an alternative negligent

---

[84]/ See Koos, 496 F.2d 1162 at 1165.

[85]/ See, e.g., Rega v. Nationwide Mut. Ins. Co., No. 1:11-CV-1822, 2012 WL 5207559, at *6–7 (N.D. Ohio Oct. 22, 2012).

[86]/ See Stout v. J.D. Byrider, 228 F.3d 709, 717 (6th Cir. 2000) (internal quotation marks and citation omitted).

[87]/ See Doc. 21-5.

[88]/ See, e.g., Molina v. Roskam Baking Co., No. 1:09-cv-475, 2011 WL 5979087, at *4 (W.D. Mich. Nov. 29, 2011) (citing In re Am. Med. Sys., Inc., 75 F.3d 1069, 1083 (6th Cir. 1996))

[82]/ See Doc. 21 at 14, 17; Doc. 27 at 10.

[83]/ Cf. Elsady v. Rapid Global Bus. Solutions, Inc., No. 09-11659, 2010 WL 2740154, at *8 (E.D. Mich. July 12, 2010) ("If the noncompliance is merely negligent, a consumer reporting agency is only liable if the plaintiff can prove actual damages.").

[84]/ See Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1988) ("No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action.").

-15-

Case No. 1:14-CV-00993
Gwin, J.

violation theory.

Because of Cox's unique factual circumstances, the Rule 23(a) prerequisites of typicality and

adequacy are not satisfied.  As such, there is no need to consider whether this class action could be

maintained under Rule 23(b)(3).

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to strike Cox's

declaration, **DENIES** Defendant's motion for summary judgment, and **DENIES** Plaintiff's motion

for class certification.

IT IS SO ORDERED.


Dated: February 5, 2015                              s/            *James S. Gwin*
                                                     JAMES S. GWIN
                                                     UNITED STATES DISTRICT JUDGE